UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


PAUL TOLER,

                    Petitioner,

vs.                                    Case No. 3:11-cv-450-J-39JBT

SECRETARY, DOC, et al.,

                    Respondents.
_____

**<u>ORDER</u>**

**I. STATUS**

    Petitioner is proceeding on a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1).[1]  It challenges a 2007 state court (St. Johns County) conviction for second degree murder.  <u>Id</u>. at 1.  One ground is raised, and the Court will thoroughly address Petitioner's claim of ineffective assistance of counsel.  <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992), <u>Dupree v. Warden</u>, 715 F.3d 1295, 1298 (11th Cir. 2013).  Upon review of the record, no evidentiary proceedings are required in this Court.

_____

    [1] With respect to the Petition, the Court will reference the page numbers assigned through the electronic docketing system.

This cause is before the Court on Respondents' Response to Petition (Response) (Doc. 8)[2] and Appendix (Doc. 9).[3] Petitioner filed a Reply to Respondents' Response to Petition (Doc. 13). <u>See</u> Order (Doc. 7), Order (Doc. 12). Exhibit A attached to the Reply is a sworn Affidavit From Trial Counsel dated December 14, 2011. (Doc. 13, Exhibit A). It states:

> I, J. Jeffery Dowdy represented Paul Toler in St. Johns County. Mr. Toler signed a plea agreement that required he plea [sic] to Second Degree Murder. It was my understanding during the plea colloquy that the Assistant State Attorney would be recommending a 25 year sentence. At the time of sentencing the Assistant State Attorney remained silent during the sentencing and the Judge sentenced his [sic] to life in prison.

<u>Id</u>.

## II. STANDARD OF REVIEW

This Court will analyze Petitioner's sole claim under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state

---

[2] Respondents calculate that the Petition is timely, Response at 10, and the Court accepts this calculation. Respondents also state that Petitioner raised his ineffective assistance of counsel claim with respect to his plea in his Rule 3.850 post conviction motion, and appealed the denial of the motion. Respondents concede that the claim is exhausted. <u>Id</u>. at 12.

[3] The Court hereinafter refers to the Exhibits contained in the Appendix as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix. Otherwise, the page number on the particular document will be referenced.

court, subject only to th[re]e exceptions." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784 (2011).   The exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.   <u>Id</u>. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence.   28 U.S.C. § 2254(e)(1).   This presumption applies to the factual determinations of both trial and appellate courts.   <u>See</u> <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.   In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

Of import,

> in a post conviction challenge to a guilty plea:
>
> > [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.
>
> Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); see also United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements

made during a plea colloquy are true, citing Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2 (N.D. Fla. May 17, 2011) (Report and Recommendation) (Not Reported in F.Supp.2d), report and recommendation adopted by Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2434087 (N.D. Fla. June 16, 2011).

## IV.  PROCEDURAL HISTORY

The record shows the following transpired.  Petitioner was charged by Indictment with first degree felony murder with a firearm.  Ex. 1.  At the last pretrial conference, on March 13, 2007, Mr. Dowdy summarized a plea agreement as follows:

> The plea agreement is that he would plead guilty to second degree murder, it will be reduced from first degree murder.  There are two other cases, I believe, that are going to be nol prossed.  **The agreement is 25 years to life.**  And, Judge, quite frankly we're trying to -- **I know the State's going to be recommending the 25.**  We're not opposed to a 25.  The problem that we have is if we plea and he's going to be sentenced to life and we're ready to go to trial on Monday, I'm not asking for the wink and the nod, I'm just -- if you can give me some type of indication.  I know you're familiar with the case.

Ex. 2 at 3 (emphasis added).

The prosecutor reminded the court that during the plea of the co-defendant, George Holman, the allegation was made that Petitioner was the shooter.  Id. at 3-4.  Mr. Dowdy and the prosecutor agreed that that was Mr. Holman's contention.  Id. at 4.

- 5 -

The court immediately advised counsel that she did not know what the sentence would be, but "if he's the shooter there's a strong possibility he'll get life." Id. The court then explained that she would listen to everyone speaking on behalf of the defense and the state, she would listen to the victim's family, and she would consider ordering a presentence investigation report (PSI) at Petitioner's request. Id. She continued that there was a good possibility he would get life, but there was also a good possibility he would get anything in the range from twenty-five years to life. Id. at 4-5. She assured the defense that she was not going to tell them that there was no possibility that Petitioner would get life. Id. at 5. At that point, defense counsel announced that they were going forward with the no contest plea to second degree murder. Id.

Petitioner was duly sworn and a plea colloquy was conducted.[4] Id. at 5. The court asked Petitioner if he wished to withdraw his not guilty plea and tender a plea of no contest to the lesser included offense of second degree murder. Id. at 6. Petitioner responded in the affirmative. Id. The court advised Petitioner that second degree murder is a first degree felony punishable by life. Id. Petitioner confirmed that he understood that the crime of second degree murder is punishable by life. Id. The court advised that he "may be considered for a lesser sentence." Id.

---

[4] Petitioner affirmed. Ex. 2 at 5.

Upon inquiry, Petitioner informed the court that he was twenty-one years of age, he acquired a GED, he could read and write, and he had been employed as a chef/cook. Id. at 6-7. Petitioner also told the court he had never been treated for any mental or emotional disability, and he did not suffer from any mental illness. Id. at 7. He also stated that he had not had any drugs or alcohol within twenty-four hours. Id.

At that point, the court informed Petitioner of his right to trial and advised him what he would be giving up by pleading no contest. Id. at 8. Petitioner stated that he had no questions concerning his rights and he felt that the plea of no contest was in his best interest. Id. at 9. Petitioner confirmed that he was not threatened, intimidated, or coerced into entering the plea. Id. The court asked: "[o]ther than the plea agreement, has anybody -- **which is range of between 25 years to life, there is no agreement other than that that's the range, other than that has anybody promised you anything to get you to enter the plea**?" Id. (emphasis added). Petitioner responded: "[n]o, ma'am." Id. Petitioner responded affirmatively that he had enough time to discuss the facts and circumstances of his case with counsel. Id. He confirmed that he was satisfied with counsel's representation. Id.

The state presented the factual basis for the plea:

> Your Honor, on about November 17th, 2004, in St. Johns County the Defendant did then and there enter into a conspiracy and an agreement

> to commit an armed robbery.  The Defendant and
> the co-defendants, Tabitha Gifford, George
> Holman, and Tierra Smith got in a car, they
> drove to the first house, that person was not
> home.  This was by all accounts and all sworn
> testimony at Tierra –- or, excuse me, Tabitha
> Gifford's behalf to bond her then boyfriend
> out of jail to acquire the monies to do so.
> They then drove to the victim's house, Mr.
> Baxter's house.  George Holman carrying what
> was believed to be a BB gun exited the car
> with the Defendant.  The Defendant approached
> carrying a handgun, and at some point during
> that attempt to rob Mr. Baxter Mr. Toler fired
> two shots into Mr. Baxter killing him.

Id. at 10.  There was no objection to the facts recited by the

state.  Id.

    After completing this thorough inquiry, the court asked

Petitioner if he still wished to plead.  Id.  Petitioner confirmed

that he still wanted to enter his no contest plea to the incident

described by the state.  Id.  Petitioner attested that no one had

told him to testify falsely based on any promise or understanding

not told to the court, and no one had told him to lie to the court.

Id.  The court found Petitioner to be alert and intelligent, and

that he understood the nature and consequences of entering his

plea.  Id. at 10-11.  The court also found there was a factual

basis for the plea.  Id. at 11.  Finally, the court accepted the

plea.  Id.

    After a discussion about when sentencing would take place, the

prosecutor stated on the record:

> And, Your Honor, as stated on the record,
> there's an inconsistency on the record, the
> range is 25 to life.  **Defense counsel while**

> **inquiring to the Court said that the State would recommend 25 years. What we discussed is that I indicated you knew all the facts of the case, the Defendant had no prior history, we wouldn't be presenting any additional testimony and very little argument, and that if the Court considered that range and found that to be proper, I have no problem with it, to be clear on that.**

Ex. 2 at 12 (emphasis added). Defense counsel said: "I guess that's about as close as a recommendation we're going to get." <u>Id</u>. The court said she would consider everything, including the PSI, any statements made by Petitioner's friends and family, the state's offerings, and presentations made on behalf of the victim's family. <u>Id</u>.

Defense counsel reminded the court that there were two cases to be nol prossed, and the state announced that it would nol pros the two cases. <u>Id</u>. at 12-13. The court confirmed that Petitioner's other two cases were nol prossed. <u>Id</u>. at 13.

On March 21, 2007, Petitioner filed a pro se Motion to Withdraw Nolo Contendere Plea. Ex. 4. Petitioner claimed that his counsel told him he would receive a twenty-five year prison term, but the court said Petitioner could get twenty-five years to life. <u>Id</u>. at 2. The court struck the handwritten pro se motion. Ex. 6. Defense counsel, on March 30, 2007, filed a Motion to Withdraw Nolo Contendere Plea, raising the same issue. Ex. 5. This motion also claimed that during plea negotiations, the state had represented to defense counsel that the state would recommend a sentence of twenty-five years, that defense counsel told his client the

- 9 -

prosecutor's position, and his client relied on this information when deciding to enter his plea. <u>Id</u>. at 1-2. In addition, it referenced the fact that the state announced at the plea hearing that it would not recommend a sentence of twenty-five years. <u>Id</u>. at 2.

On May 8, 2007, at the hearing on the motion to withdraw the plea, defense counsel announced that the defense was withdrawing the motion. Ex. 7 at 3. A sentencing hearing followed. <u>Id</u>. Petitioner apologized to the victim's family, and defense counsel spoke on Petitioner's behalf and on behalf of Petitioner's family members who were present. <u>Id</u>. at 3-4. Mr. Dowdy asked the court for a twenty-five year sentence. <u>Id</u>. at 5. The prosecutor, in response, said he had nothing to add, as the court was well aware of the gravity of the situation and the loss to the family of the victim. <u>Id</u>. The court then asked if anyone from the victim's family would care to speak. <u>Id</u>. at 6. Ms. Baxter, the victim's daughter, spoke. <u>Id</u>.

The court inquired as to whether there was an offer by the state or a range. <u>Id</u>. at 7. The prosecutor responded there was a range of twenty-five to life. <u>Id</u>. The court then asked if the state had a recommendation, and the state asked for life. <u>Id</u>. at 8. The court noted that Petitioner had an extensive juvenile record. <u>Id</u>. The court then asked the prosecutor if it is the state's contention that Petitioner was the shooter, and the prosecutor responded in the affirmative. <u>Id</u>. at 9. The court

adjudicated Petitioner to "no contest to second degree murder," and sentenced him to life in prison. Id. The court entered Judgment and Sentence on May 8, 2007, and then entered a Corrected Judgment and Sentence on May 31, 2007. Ex. 8 at 147-51, 188-191.

Meanwhile, on May 14, 2007, Petitioner filed his *pro se* Motion to Withdraw Nolo Contendere Plea. Ex. 10. Petitioner claimed the state breached the agreement to recommend a sentence of twenty-five years in prison. Id. at 2. The circuit court conducted a hearing on the motion on January 31, 2008. Ex. 11. The court appointed counsel to represent Petitioner. Id. Jeff Dowdy, defense counsel for the plea proceeding, testified that prior to Petitioner entering his plea, it was counsel's understanding that the state would recommend a sentence of twenty-five years to the court; however, at the plea proceeding, the state said it would not recommend twenty-five years, but it would not oppose it. Id. at 9.

Although Petitioner and defense counsel both filed motions to withdraw the plea, they discussed the matter before the hearing on counsel's motion to withdraw the plea, and they decided not to proceed with the request to withdraw the plea. Id. at 10. Mr. Dowdy attested that, at that point, the understanding by the defense was that the state would not oppose a twenty-five year sentence, and that Petitioner would "still probably receive the 25 years." Id. Counsel discussed the matter with Petitioner. Id. at 11. Mr. Dowdy stated that the defense formally withdrew the motion to withdraw the plea, they went forward with sentencing, and the

- 11 -

state recommended a life sentence.   _Id_.   Mr. Dowdy said he was surprised by the state's recommendation of a life sentence.   _Id_.

On cross, Mr. Dowdy explained that he was disappointed by the life sentence.   _Id_. at 12.   He confirmed that prior to sentencing, he discussed the terms of the plea with Petitioner and told him that he could receive twenty-five years to life.   _Id_.   Mr. Dowdy noted that "Judge [Wendy] Berger made it abundantly clear that the maximum penalty could be life."   _Id_. at 13.   The prosecutor asked Mr. Dowdy the following:

> Q   Okay.   And, in fact, during the entrance of the plea dialog, that dialog was interrupted and you actually stepped into the jury room and discussed this with Mr. Toler; it that correct?
>
> A   That's correct.
>
> Q   Okay.   And again at that time you advised him that the plea was 25 to life, correct?
>
> A   Yes.

_Id_.

The prosecutor then asked if Mr. Dowdy remembered that the state informed the court that if the court considered the range and found it to be proper, the state would not have a problem with it, and Mr. Dowdy responded that was correct.   _Id_. at 13-14.   Mr. Dowdy stated that he had hoped that the sentence would be twenty-five years rather than life.   _Id_. at 16.   Mr. Dowdy confirmed that he had not received assurances, other than those placed on the record, as to the state's position.   _Id_. at 17.   This exchange followed:

Q    Okay.    Did  you,  at  any  time,
affirmatively advise your client that he would
definitely receive 25 years?

A    No,  I  never  used  the  word
definitely.   I  always  realized  that  the
ultimate decision would be up to Judge Berger.

Q    And  what  was  his  [Petitioner's]
response to that?

A    We felt comfortable.  We -- I mean,
withdrawing the plea and going to trial just
did not seem like a viable alternative.   I
mean, we were in a tough position either way.
We knew the motion to suppress was denied.  It
was very damning -- damaging evidence against
Mr. Toler, and we were hoping for the best,
get the 25 years.

Q    But  to  be  clear,  and  sorry  to
restate this, but the term of 25 years was
never affirmatively offered by the state, nor
advertised by you to Mr. Toler as to what he
would receive?

A    No, the offer -- the offer, it's my
understanding, was 25 years to life.  That was
the plea agreement.

Id. at 17-18.  Finally, Mr. Dowdy noted that at the beginning of

the plea proceeding there was some confusion as to whether the

state was recommending twenty-five years or simply not going to

oppose the twenty-five years, but at the conclusion of the plea

colloquy, the state clarified its position that it would not oppose

twenty-five years if the judge was comfortable with that sentence.

Id. at 19.

Petitioner testified that at the May 8, 2007 sentencing,

defense counsel told him that the state would recommend the twenty-

five year sentence to the court, and Petitioner understood that he

- 13 -

would receive twenty-five years.  <u>Id</u>. at 23-24.  Petitioner said
that on the date of the plea proceeding, he understood the plea
agreement to be that he would receive a twenty-five year sentence.
<u>Id</u>. at 24.  Petitioner explained:

> A    When -- when I originally plead out,
> Mr. Dowdy told me that the plea was for 25 to
> life, but that the **Judge wasn't going to --**
> **would not likely give me a life sentence**, and
> that if I pled out to 25 to life, that **I would**
> **most likely receive a 25-year sentence.**

<u>Id</u>. at 27 (emphasis added).

Petitioner testified that his attorney coaxed him into
pleading to twenty-five years to life because "[h]e had me feeling
that I was going to get 25 years no matter what."  <u>Id</u>. at 28.
Petitioner said when he came back on May 8, 2007, counsel told him
to plead out to receive mercy and get twenty-five years.  <u>Id</u>. at
36.

Thereafter, on February 13, 2008, the court entered an Order
Denying Defendant's Motion to Withdraw Nolo Contendere Plea.  Ex.
12.  The court found, in pertinent part,

> The State then, at the time Defendant entered
> his plea, promptly dissuaded any notion that
> it would recommend 25 years.  Further the
> State did not promise to refrain from making a
> recommendation to the Court.  Defendant was
> well aware entering his sentencing hearing
> that the State was not going to recommend 25
> years.  He was also well aware that the Court
> could sentence him to life, as clearly
> evidenced by the record (See Appendix A), as
> well as Defendant's testimony regarding the
> reason for filing his initial motion to
> withdraw plea - because he thought he might
> get life.

> Defendant has failed to prove that the
> State breached its plea agreement.  The State
> did not promise to abstain from recommending
> life at sentencing, nor to remain silent as to
> a recommendation.

Ex. 12 as 2-3.

Petitioner raised two grounds on direct appeal, one of which is related to Petitioner's current claim:

> Whether the court erred in denying Defendant's
> motion to withdraw his plea when Defendant
> testified that he understood that the state
> would recommend a 25 year sentence, that only
> after Defendant's plea was qualified the state
> correct[ed] the record and state they would
> not oppose a 25 year sentence, would not
> present any additional testimony and very
> little argument and the state instead at
> sentencing, had the daughter of the victim
> available to address the court, and
> recommended life imprisonment, and defendant
> was so sentenced.

Ex. 14.  The state answered.  Ex. 15.  On February 17, 2009, the Fifth District Court of Appeal affirmed per curiam.  Ex. 17.  The mandate issued on March 11, 2009.  Ex. 18.

On December 15, 2009, pursuant to the mailbox rule, Petitioner filed a Rule 3.850 post conviction motion in the trial court.  Ex. 19.  The state responded.  Ex. 20.  The trial court, in an order filed July 1, 2010, denied the Rule 3.850 motion.  Ex. 21.  Petitioner appealed. Ex. 22; Ex. 23.  The Fifth District Court of Appeal per curiam affirmed on December 21, 2010.  Ex. 24.  The mandate issued on January 12, 2011.  Ex. 25.

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Ground One

Ground one of the Petition is: "[t]rial counsel[']s assistance was rendered ineffective w[h]ere trial counsel misadvised the petitioner of the terms of the 'no contest plea', which caused the petitioner[']s no contest plea to be involuntary, unknowing, and unintelligently entered, to which violates the petitioner[']s guaranteed rights afforded in the Sixth and Fourteenth Amendments of the United States Constitution." Petition at 7.  In support of this ground, Petitioner claims his attorney advised him that he had obtained a plea offer of twenty-five years in prison, and that by accepting the offer and pleading no contest to second degree murder, Petitioner would be sentenced to twenty-five years in prison and the remaining two charges against Petitioner would be nol prossed.  Id.  Petitioner further states that counsel obtained a promise from the state that at sentencing, it would recommend a twenty-five year sentence to the court, and although Petitioner was entering a no contest plea with a sentencing range of twenty-five years to life, Petitioner would definitely receive a sentence of twenty-five years in prison because the court was bound by law not to exceed the state's recommended twenty-five year sentence unless the court found aggravating circumstances.  Id.  Finally, Petitioner alleges that his counsel assured him that he was familiar with the judge, and that counsel was convinced that the judge would not exceed the state's recommendation.  Id.  Finally,

Petitioner states that he relied on counsel's advice to plead no contest because counsel determined there was no defense that he could formulate that would be successful, and counsel found the offer to be a good offer, with Petitioner avoiding the death penalty on the first degree murder charge, the state agreeing to nol pros two cases against Petitioner, and Petitioner being released from prison as a relatively young man.  Id. at 8.

The trial court provided a succinct history of the case in its Order on Motion for Postconviction Relief:

> Defendant was charged with first degree felony murder with a firearm.  On March 13, 2007, Defendant pled no contest to second degree murder.  Prior to sentencing, Defendant, through counsel, filed a Motion to Withdraw Plea.  The Motion was set to be heard on May 8, 2007, but the motion was withdrawn at the hearing.  That same day, Defendant was sentenced to serve life in prison.  On May 16, 2007, Defendant filed a *pro se* motion seeking to withdraw his plea.  After a hearing, the motion was denied.  Defendant's case was affirmed on appeal.

Ex. 21 at 1.

The trial court, in rejecting Petitioner's claim, recognized that the standard to be employed to review a claim of ineffective assistance of counsel is set forth in Strickland v. Washington. Ex. 21 at 1-2.  The court also noted that in order to satisfy the prejudice prong of the two-part Strickland test in a plea case, Petitioner must show that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and

- 17 -

would have insisted on proceeding to trial, citing authority quoting <u>Hill v. Lockhart</u>.  Ex. 21 at 2.

The trial court, in denying the Rule 3.850 motion, rejected Petitioner's claim of ineffective assistance of counsel for misadvising Petitioner with respect to the terms of the no contest plea.  The court held:

> In ground one of his motion, Defendant argues that counsel misadvised him of the terms of his no contest plea, misadvised him of the meaning of the clauses of the plea, misadvised him of the State's recommended sentence and the bearing of that recommendation, and misadvised him of the maximum sentence and the bearing of that recommendation, and misadvised him of the maximum sentence he could receive based on the clauses of the plea.  Defendant's claim is conclusively refuted by the record.  It was made clear numerous times on the record that Defendant could receive a sentence anywhere in the range of 25 years to life.  <u>See</u> Transcript of Proceedings dated March 13, 2007, pp. 3-5,9, attached hereto as Appendix A.  Prior to entering his plea, Defendant's attorney stated on the record that Defendant would plead guilty to second degree murder and the agreement was for 25 years to life.  <u>See</u> Appendix A, p. 3.  Defendant was well informed by the Court that a life sentence was a "good" possibility.  <u>See</u> Appendix A, p. [sic] 4-5.  During the plea colloquy, the Court and the Defendant had the following exchanges:
>
>> THE COURT: Second degree murder is a, I believe, first degree felony punishable by life, correct?
>>
>> MR. DOWDY: That's correct, Your Honor.
>>
>> MR. FRANCE [prosecutor] That's correct.

- 18 -

THE COURT: All right. Which is punishable by life and –– do you understand that?

MR. TOLER: Yes, ma'am.
<u>See</u> Appendix A, p. 6.

....

THE COURT: **Other than the plea agreement, has anybody –– which is a range of between 25 years to life, there is no agreement other than that that that's the range, other than that has anybody promised you anything to get you to enter the plea?**

**MR. TOLER: No, ma'am.**
<u>See</u> Appendix A, p.9.

Furthermore, in his *pro se Motion to Withdraw Nolo Contendere Plea* filed on March 23, 2007, Defendant stated:

The Defendant entered his *nolo contendere* plea base[sic] on defense counsel's information that Defendant would receive a 25 year term. However, when the defendant entered his plea, the trial court could not/would not give any assurances that defendant would get a 25 year term.

<u>See</u> *Motion to Withdraw Nolo Contendere Plea,* attached hereto as Appendix B.

The Court notes that this *pro se* motion was stricken because Defendant was represented by counsel at the time of filing; however, Defendant's counsel later filed a Motion to Withdraw Nolo Contendere Plea, on behalf of the Defendant.  <u>See</u> *Motion to Withdraw Nolo Contendere Plea* filed March 30, 2007, attached hereto as Appendix C.  The Court scheduled the motion to be heard on the same day as sentencing; however, the motion was withdrawn, without objection from the defendant, prior to

- 19 -

sentencing.        Defendant    proceeded    to
sentencing, and Defendant's counsel made it
clear on the record that Defendant was facing
a   life   sentence.   <u>See</u>   Transcript   of
Proceedings dated May 8, 2007, pp. 4-5,
attached hereto as Appendix D.

Additionally, some of the issues raised
in ground one of Defendant's motion were
addressed at the evidentiary hearing on the
*pro se* Motion to Withdraw Nolo Contendere Plea
filed by Defendant post-sentencing.   <u>See</u>
Transcript of Proceedings dated January 31,
2008, attached hereto as Appendix E; *Order
Denying Defendant's Motion to Withdraw Nolo
Contendere Plea,* attached hereto as Appendix
F.  At that hearing, the Court heard testimony
from   Defendant's   counsel   and   Defendant
regarding their conversations leading up to
Defendant's plea and sentencing, and their
understanding as to the terms of the plea
agreement.  <u>See</u> Appendix E, pp. 12-13, 17-18,
27-39, 55-58.

Defendant has failed to show how he was
prejudiced by counsel's alleged misadvice
regarding his sentence.    Even if counsel
informed Defendant he would receive or was
likely to receive a twenty-five year sentence,
the detailed plea colloquy informed Defendant
that the offer was merely a range and the
Court would impose a sentence within that
range.  Defendant indicated several times that
he understood that his plea contemplated a
sentence with the range of twenty-five years
to life in prison.  Therefore, ground one will
be summarily denied.

Ex. 21 at 2-4 (emphasis added).

The circuit court also rejected Petitioner's contention that

counsel was ineffective for failure to inform Petitioner that he

had a viable defense countering the assertion by a co-defendant

that Petitioner was the shooter:

In ground two, Defendant argues that counsel failed to inform him of viable defenses. Defendant claims that counsel's failure to inform him that a hybrid defense of fabrication/independent act of a co-defendant was a viable defense constituted deficient performance. Defendant's claim is premised on his allegation that he was not the shooter, and the murder was the independent act of one of his co-defendants. Even if the co-defendants' statements that Defendant was the shooter were fabricated and could have been challenged on cross-examination, Defendant cannot show that his trial counsel was deficient for failing to employ such strategy or that Defendant was prejudiced by counsel's performance.

. . . .

Defendant was charged with first degree felony murder with a firearm. Defendant's trial counsel was not ineffective for failing to inform Defendant about the independent act doctrine because, under Florida law, Defendant was not entitled to an independent act instruction. At his motion to suppress hearing, Defendant admitted that the plan was to rob Mr. Baxter and that both he and Mr. Holman had a gun. <u>See</u> Transcript of Proceedings dated September 12, 2006, pp. 13-14, attached hereto as Appendix G. Because Defendant and Mr. Holman committed a robbery, each with a weapon, death was clearly a foreseeable result of the plan, and Defendant could not claim that the murder was an independent act, even if Mr. Holman was the shooter. <u>See</u> <u>Roberts v. State</u>, 4 So.3d 1261, 1264 (Fla. 5th DCA 2009) (explaining that the independent act theory is inappropriate when the defendant "knew that firearms or deadly weapons would be used"), *review dismissed*, 14 So.3d 1004 (2009).

Ex. 21 at 4-5.

The court continued:

Furthermore, this claim is incredible based on the record events in this case. Defendant entered a plea of no contest to the charge of second degree murder. The factual basis for the plea specifically stated that the "Defendant approached [the victim] carrying a handgun, and at some point during that attempt to rob Mr. Baxter, Mr. Toler fired two shots into Mr. Baxter killing him." See Appendix A, p. 10. Defendant never objected to or refuted the allegation that he was the shooter despite the fact it was included as part of the factual basis for the plea, and the Court announced on the record that Defendant being the shooter would have a bearing on his sentence. See Appendix A, pp. 3-5.

Additionally, it is clear Defendant was aware that at least one of his co-defendants, George Holman, changed his version of the facts while his case was pending. In his motion, Defendant states that he told his attorney that his co-defendant, George Holman, made an emphatic statement that "he knew in his heart, Defendant was not the shooter" because Mr. Holman shot the victim unexpectedly in an act independent of Defendant, and the other two co-defendants. See Motion for Postconviction Relief, p. 10, attached hereto as Appendix H. Prior to Defendant entering his plea, it was discussed that all of the facts concerning the crime were laid out during the plea of Mr. Holman, and the allegation was that Defendant was the shooter. See Appendix A, pp. 3-4. Therefore, Defendant was aware of the discrepancy in the statements made by Mr. Holman and still chose to enter his plea and make no objection to the allegation that Defendant was the shooter. Therefore ground two of Defendant's motion will be denied.

Ex. 21 at 5-6.

Finally, the court addressed Petitioner's assertion that counsel failed to properly advise him concerning the allegations

which would support the factual basis for his plea.   The court
said:

> In ground three, Defendant argues that
> counsel failed to inform him of the specific
> allegations of the factual basis of his no
> contest plea before it was entered.
> Specifically, Defendant argues that counsel
> should have informed him that by accepting the
> factual basis for the plea, he would be
> accepting that he was the triggerman.
> Defendant's claim is conclusively refuted by
> the record.   During the plea colloquy the
> State proffered the following factual basis:
>
>> Your Honor, on or about November
>> 17th, 2004, in St. Johns County the
>> Defendant did then and there enter
>> into a conspiracy and an agreement
>> to commit an armed robbery.   The
>> Defendant and the co-defendants,
>> Tabitha Gifford, George Holman, and
>> Tierra Smith got in a car, they
>> drove to the first house, that
>> person was not home.   This was by
>> all accounts and all sworn testimony
>> at Tierra -- or, excuse me, Tabitha
>> Gifford's behalf to bond her then
>> boyfriend out of jail to acquire the
>> monies to do so.   They then drove to
>> the victim's house, Mr. Baxter's
>> house.   George Holman carrying what
>> was believed to be a BB gun exited
>> the car with the Defendant.   The
>> Defendant approached carrying a
>> handgun, and at some point during
>> that attempt to rob Mr. Baxter Mr.
>> Toler fired two shots into Mr.
>> Baxter killing him.
>
> See Appendix A, pp. 9-10.
>
> Defendant's attorney indicated there was
> no objection to the factual basis and shortly
> thereafter, Defendant stated he still wanted
> to enter his plea.   Defendant was clearly
> aware of the factual basis, including the
> statement that he fired two shots into Mr.

- 23 -

> Baxter killing him.  Furthermore, at the
> beginning of the plea discussion, the Court
> discussed the fact that it was alleged that
> Defendant was the shooter.  See Appendix A,
> pp. 3-4.  Therefore, ground three will be
> summarily denied.

Ex. 21 at 6-7.  The appellate court affirmed the circuit court's

decision on appeal.  Ex. 24.

A federal habeas court reviews a state court guilty plea only

for compliance with constitutional protections.

> This court has concluded that "[a] reviewing
> federal court may set aside a state court
> guilty plea only for failure to satisfy due
> process:  If a defendant understands the
> charges against him, understands the
> consequences of a guilty plea, and voluntarily
> chooses to plead guilty, without being coerced
> to do so, the guilty plea . . . will be upheld
> on federal review." Stano v. Dugger, 921 F.2d
> 1125, 1141 (11th Cir.) (en banc), cert.
> denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
> 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied,

510 U.S. 967 (1993).  Thus, in order for a guilty plea to be

constitutionally valid, it must be made knowingly, intelligently,

and voluntarily.  Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir.

1994).

Upon review, Petitioner was advised of the maximum penalty (a

life sentence), as required by Supreme Court precedent.  Boykin v.

Alabama, 395 U.S. 238 (1969).  In fact, "[c]ourts consider a

petitioner to be 'fully aware of his plea consequences' if he

understands the length of time he might possibly receive."

Resendez v. United States, No. 1:06-CV-191, 2006 WL 2092589, at *3

(E.D. Tex. July 25, 2006) (not reported in F.Supp.2d) (quoting Spinelli v. Collins, 992 F.2d 559, 561 (5th Cir. 1993)).  Here, Petitioner was fully aware that he was facing a maximum possible penalty of a life sentence under the terms of the plea agreement.

The trial court conducted a very thorough plea colloquy. Petitioner was sworn and the state provided a factual basis for the plea.  The colloquy shows that Petitioner understood that the plea agreement was for a range of twenty-five years to life.  The court made it quite clear that if Petitioner was the shooter, which is exactly what a co-defendant was now alleging and the state was asserting, there was a strong possibility Petitioner would get life.  The court asked Petitioner if there was anything else promised to him other than the range of twenty-five years to life, and he responded no.  After hearing the factual basis for the plea presented by the prosecutor, Petitioner responded in the affirmative that he wanted to plead no contest.  The court found Petitioner to be alert and intelligent and that he understood the nature and consequences of entering his plea of no contest.  The court found a factual basis for the plea and accepted the plea. Thereafter, the state clarified that it would not recommend twenty-five years, but if the court considered the range and found twenty-five years to be proper, the state had no problem with it.

At sentencing, after Petitioner withdrew his motion to withdraw his plea, the state said there was a range of twenty-five years to life.  Upon inquiry by the court, the state recommended a

life sentence.  In considering the appropriate sentence, the court noted Petitioner's extensive juvenile record.  The prosecutor confirmed that it was the state's contention that Petitioner was the shooter.  The court adjudicated Petitioner guilty of second degree murder and sentenced him to life.  The court, during the January 31, 2008 hearing on the motion to withdraw the no contest plea, stated that the prosecutor "never said he wasn't going to give a recommendation."  Ex. 11 at 51.  Additionally, the court commented that the state never said it would stand silent.  Id.

Mr. Dowdy testified that he told Petitioner he could receive twenty-five years to life, and that Judge Wendy Berger made it clear that Petitioner was facing a maximum penalty of life in prison.  Mr. Dowdy further testified that he never told his client that he would definitely receive twenty-five years.  Mr. Dowdy attested that he always told his client that the ultimate decision was up to Judge Berger.  Mr. Dowdy explained that the defense really had no viable alternative other than to accept the plea offer of a range of sentence because the motion to suppress had been denied, and there was significant damaging evidence against Petitioner.  Mr. Dowdy said they were hoping for the best by accepting the agreement for a sentence with a range of twenty-five years to life.  Mr. Dowdy confirmed that the plea offer and agreement was for twenty-five years to life.

Based on the above, it is clear that Mr. Dowdy did not obtain a plea offer of twenty-five years for Petitioner.  There simply was

- 26 -

no such agreement.   The record shows that Petitioner was fully aware that the plea agreement was for a range of twenty-five years to life.   He knew that he faced a maximum sentence of life in prison.   The state announced on the record that it would not recommend a twenty-five year sentence, but if the court wanted to consider it, the state had no problem with it.

Also, based on the record, the state never agreed to stand silent at sentencing.   Mr. Dowdy testified that he never told Petitioner he would definitely receive a twenty-five year prison sentence.   Finally, it is quite apparent from the record that the defense hoped for a twenty-five year sentence because the alternative, to go to trial after the court denied the motion to suppress, was not a viable option as there was significant damaging evidence against Petitioner, including the co-defendant's assertion that Petitioner was the shooter.   Finally, even assuming defense counsel was not very familiar with Judge Berger, there was no mystery involved in Judge Berger's view of the appropriate sentence for the shooter of the victim; Judge Berger announced at the plea proceeding that if Petitioner was asserted to be the purported shooter, there was a strong possibility he would get life.

In sum, it is quite apparent that there was no negotiated disposition other than the fact that in exchange for a plea of no contest to second degree murder, the state would agree to a sentencing range of twenty-five years to life for the lesser offense of second degree murder, and the other two cases would be

nol prossed.  The court sentenced Petitioner to life for second degree murder, and the state nol prossed the two outstanding cases. Petitioner agreed to the terms of the plea, and the plea does not constitute an involuntary plea.

Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged errors, Petitioner would not have pleaded guilty and would have insisted on going to trial.  With regard to the original charge of first degree felony murder with a firearm, Petitioner was facing at least a life sentence.[5]  Petitioner confirmed that he understood that the maximum penalty on the lesser-included offense of second degree murder would be life in prison.  Petitioner confirmed that other than what was announced in open court, no promises were made and he had not been threatened, intimidated or coerced into entering the plea. Petitioner told the court that he had discussed his case with counsel, and admitted his satisfaction with counsel's representation.  When the state provided its factual basis for the plea, no objections or exceptions were made.

Even assuming deficient performance, Petitioner has not shown prejudice, as Petitioner was facing substantial time.  Thus, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his

---

[5] It is not apparent from the record submitted to this Court that the state provided notice that it was going to seek the death penalty.

lawyer had given the assistance that Petitioner has alleged should have been provided.   Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

Petitioner is not entitled to relief on ground one of the Petition, the claim of ineffective assistance of trial counsel.[6] Deference, under AEDPA, should be given to the state courts' decisions.   Petitioner raised the issue in his Rule 3.850 motion, the trial court denied the motion, and the appellate court affirmed.   The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.   Ground one, Petitioner's claim of ineffective assistance of counsel, is due to be denied.

## VI.   CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted.   See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. §2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[6] Petitioner waived any claims regarding the merits of his defense or prosecution when he entered his plea.

constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of April, 2014.

_____
BRIAN J. DAVIS
United States District Judge

sa 4/24
c:
Paul Toler
Ass't A.G. (Phillips)